UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| BIRIM GROUP, LLC, | |
| Plaintiff, | No. 20 C 07198 |
| v. | Judge Thomas M. Durkin |
| PAA KWESI NDUOM, et al., | |
| Defendants. | |

**MEMORANDUM OPINION AND ORDER**

Plaintiff Birim Group, LLC filed this suit raising claims under the Racketeer Influenced and Corrupt Organizations ("RICO") statute, 18 U.S.C. § 1961 *et seq.*, and a series of common-law theories including breach of contract, fraud, and financial negligence. Plaintiff is proceeding as assignee of two Ghanaian citizens, Ms. Sekyere and Mr. Barimah (collectively, "Assignors"), who allegedly lost deposits with Ghanaian financial institutions of $52,219 and $30,000, respectively. Despite the apparent simplicity of those claims, the complaint alleges that Defendant Paa Kwesi Nduom, a.k.a. Dr. Papa Kwesi Nduom, along with several of his family members and a collection of allegedly "sham" corporations, have perpetrated a wide-ranging course of money laundering and financial fraud, of which Assignors' losses are merely a small fraction.

1

The matter is now before the Court on a motion to dismiss filed by all Defendants based in the U.S.[1] The U.S. Defendants characterize Plaintiff's complaint as a political smear devoid of actionable allegations. They argue that the alleged conduct is not the proper subject of a RICO action and falls outside this Court's jurisdiction, and that Plaintiff has otherwise failed to state a claim.

For the reasons set out below, the Court now grants the U.S. Defendants' motion to dismiss. The Court also *sua sponte* dismisses the claims against the non-U.S. Defendants.

## Background

Focusing first on Assignor Sekyere, Plaintiff alleges she opened an account with defendant Gold Coast Fund Management, a Ghanaian company, on November 23, 2017, and made several deposits totaling approximately $52,219. Gold Coast allegedly promised that the money would be invested in low-risk instruments, with earnings paid to her quarterly. At the conclusion of the investment term, she would receive payment of $80,000, exclusive of interest. However, in 2018, Gold Coast unilaterally restructured the agreement eliminating the quarterly earning payments and extending the principal repayment timeline. To date, Sekyere has not received any money from Gold Coast. R. 1 ¶¶ 92-96.

---

[1] The U.S. Defendants are Paa Kwesi Nduom, Yvonne Nduom, Nana Kweku Nduom, Edjah Nduom, Nana Aba Nduom, Robert Klamp, James L. Buckner, Lisa Finch, Francis Baffour, William C. Goodall, Donald Davidson, GN Bank, International Business Solutions, LLC, Groupe Nduom USA, LLC, and GN Money, LLC.

On or about August 19, 2019, Sekyere sued Gold Coast in Ghana, seeking recovery of her deposit and additional relief.[2] R. 15-1. The complaint alleges that the Ghanaian SEC revoked Gold Coast's broker license on November 8, 2019, due in part to violation of Ghanaian securities regulations. R. 1 ¶ 90. On December 27, 2019, Sekyere assigned any claims she had under the terms of "the investment agreement" to Plaintiff. R. 1 ¶ 97. The status of Sekyere's suit in Ghana is unknown.

As to Assignor Barimah, Plaintiff alleges that he opened an account with GN Bank, a Ghanaian company, in December 2016. Barimah agreed that his monthly salary would be deposited in his account and would be payable on demand. However, on multiple occasions since July 2019, GN Bank has refused to honor Barimah's withdrawal requests. It is not entirely clear how much Barimah deposited with GN Bank—the complaint says that the "running minimum balance on assignor's account at the time his salary was deposited into defendant [GN Bank's] branch was approximately $30,000." R. 1 ¶¶ 98-101. The Central Bank of Ghana allegedly revoked GN Bank's banking license on August 16, 2019, due in part to undercapitalization. R. 1 ¶¶ 82-83. Barimah assigned his claims under "the deposit agreement" to Plaintiff on December 21, 2019. R. 1 ¶ 102.

Although Federal Rule of Civil Procedure 8's call for a "short and plain" statement of the claim might have been satisfied with a focus on the Assignors' alleged losses, Plaintiff's 60-plus page complaint covers substantially more ground.

---

[2] This Court may take judicial notice of proceedings in other courts on a motion to dismiss. *Opoka v. I.N.S.*, 94 F.3d 392, 394 (7th Cir. 1996).

Plaintiff alleges an intricate conspiracy orchestrated by Nduom and his family through shell companies and corporate alter egos. The complaint is adorned with extraneous information, making the allegations difficult to parse into a coherent narrative. In short, Plaintiff alleges that Nduom, with the aid of his family, has engaged in extensive money laundering operations whereby customer deposits at financial institutions under his control, including the entities holding Assignors' deposits, were comingled with other funds and fraudulently transferred to other entities (including U.S.-based companies), where Nduom appropriated the money for his own personal endeavors. Most of the allegations appear wholly unrelated to any losses suffered by Assignors, save the fact that the companies they dealt with are alleged to be part of the same conspiracy, and that every defendant is allegedly an "agent, servant, licensee, employee, or alter ego" or every other defendant. R. 1 ¶ 54.

## Legal Standard

A Rule 12(b)(6) motion challenges the "sufficiency of the complaint." *Berger v. Nat. Collegiate Athletic Assoc.*, 843 F.3d 285, 289 (7th Cir. 2016). A complaint must provide "a short and plain statement of the claim showing that the pleader is entitled to relief," Fed. R. Civ. P. 8(a)(2), sufficient to provide defendant with "fair notice" of the claim and the basis for it. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). This standard "demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). While "detailed factual allegations" are not required, "labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555. The complaint must "contain sufficient factual matter, accepted as true, to 'state a

4

claim to relief that is plausible on its face.'" *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 570). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Boucher v. Fin. Sys. of Green Bay, Inc.*, 880 F.3d 362, 366 (7th Cir. 2018) (quoting *Iqbal*, 556 U.S. at 678). In applying this standard, the Court accepts all well-pleaded facts as true and draws all reasonable inferences in favor of the non-moving party. *Tobey v. Chibucos*, 890 F.3d 634, 646 (7th Cir. 2018).

## Analysis

I.    RICO Claims

"18 U.S.C. § 1964(c), colloquially referred to as 'civil RICO,' empowers private parties to bring lawsuits against those engaged in racketeering activity when that activity has caused them harm." *Armada (Singapore) PTE Ltd. V. Amcol Int'l Corp.*, 885 F.3d 1090, 1093 (7th Cir. 2018). To recover, a private RICO plaintiff must "allege and prove a *domestic* injury to its business or property." *RJR Nabisco, Inc. v. European Cmty.*, 136 S. Ct. 2090, 2106 (2016). In *RJR Nabisco*, the Supreme Court observed that freely permitting foreign citizens to invoke the remedies under RICO would allow them to "bypass their home countries' less generous remedies" and potentially create "international friction." *Id.* at 2107; *see also F. Hoffmann-La Roche Ltd. v. Empagran S.A.*, 542 U.S. 155 (2004) (discussing similar concerns with antitrust laws).

The Supreme Court did not explain exactly what constituted a "domestic injury." But it directed courts to "focus on where the injury is *suffered*." *Armada*, 885 F.3d at 1094. This inquiry contemplates "two common-sense questions: (1) who

became poorer, and (2) where did they become poorer." *City of Almaty v. Ablyazov*, 226 F. Supp. 3d 272, 282 (S.D.N.Y. 2016). When the injury is the deprivation of tangible property, the location of that property will often be dispositive. *See Bascuñán v. Elsaca*, 874 F.3d 806, 820-21 (2d Cir. 2017).

Defendants point the Court to *City of Almaty* as a useful comparison. There, the plaintiffs alleged that several defendants embezzled public assets and money located in Kazakhstan, then laundered the cash through a series of shell companies and sham transactions, including real estate investments in the United States. *City of Almaty*, 226 F. Supp. 3d at 275-76. The court dismissed the RICO claims for lack of a domestic injury. *Id.* at 281.

The Court first rejected the "suggestion that an alleged RICO injury may be deemed 'domestic' or 'foreign' purely by reference to the location of the predicate acts that purportedly caused it." *Id.* It observed that this argument ignores "the Supreme Court's emphatic directive that the 'presumption against extraterritoriality must be applied *separately* to both RICO's substantive prohibitions and its private right of action.'" *Id.* Rather, the question of where the injury arose is independent of where the allegedly injurious conduct occurred. *Id.* at 282.

Turing to the alleged injuries, the court noted that plaintiffs were "undisputedly both aliens that are not alleged to hold assets or to maintain any operations, instrumentalities, or other presence in the United States." *Id.* at 284. The losses they suffered arose when property and money they held in Kazakhstan was taken from them there. Answering the basic questions above, the court wrote, "the

6

Kazakh Entities clearly 'got poorer' in Kazakhstan." *Id.* at 284. The location of the harm was dispositive—the defendants' alleged investment of some of the embezzled funds in U.S. real estate projects did not transform the injury into a domestic one. *Id.* at 285; *see also Bascuñán*, 874 F.3d at 819 ("We ultimately conclude that an injury to tangible property is generally a domestic injury only if the property was physically located in the United States, and that a defendant's use of the U.S. financial system to conceal or effectuate his tort does not, on its own, turn an otherwise foreign injury into a domestic one.").

*City of Almaty* is a clear analogue to the instant case, which similarly lacks any domestic injury. The Assignors are the ones who became poorer, and they became poorer in Ghana. Like the plaintiffs in *Almaty*, Assignors are foreign citizens with no apparent ties to the United States. They invested their money in Ghanaian financial institutions, and any alleged connection to the United State arose only after they lost it. Such "downstream effects of the initial injury" are irrelevant to the question of where that injury was suffered. *Exceed Indus., LLC v. Younis*, No. 15 C 14, 2016 WL 6599949, at *3 (N.D. Ill. Nov. 8, 2016).

Plaintiff argues that as a domestic entity itself, "having acquired the claims on which the suit is based," it has "*ipso facto*, suffered a domestic injury and may properly bring an action under the statute." R. 20, at 15. This assertion is completely contrary to the principle that an assignee "stands in the shoes of the assignor and assumes the same rights, title and interest possessed by the assignor." *Perry v. Globe Auto Recycling, Inc.*, 227 F.3d 950, 953 (7th Cir. 2000). Plaintiff's RICO claims are

therefore barred by the domestic injury requirement just as if Assignors had brought them personally. *See In re Countrywide Fin. Corp. Mortgage-Backed Sec. Litig.*, 2014 WL 3529686, at *2 (C.D. Cal. July 14, 2014) (noting the general rule that a cause of action "accrues at the residency of the assignor as opposed to the residency of the assignee"). If a foreign citizen's RICO claim could be domesticated simply by assigning it to any domestic entity, it would render the domestic injury requirement a complete nullity and exacerbate the very concerns the Supreme Court considered in *RJR Nabisco*. *See* 136 S. Ct. at 2106-08; *see also In re Countrywide*, 2014 WL 3529686, at *2 (raising similar concerns about claimants avoiding statutes of limitation via assignment).

Because Plaintiff has not alleged a domestic injury, the Court need not consider whether its other allegations are sufficient to state a RICO claim. Counts I and II of the complaint are dismissed with prejudice.

II.     Remaining Claims Against U.S. Defendants

        a.   Subject Matter Jurisdiction

With Plaintiff's RICO claims dismissed, the jurisdictional hook under 28 U.S.C. § 1331 is gone. Plaintiff's complaint also alleges diversity jurisdiction under 28 U.S.C. § 1332. The amounts in controversy are not clear, but it appears that Assignors lost deposits of approximately $52,219 and $30,000, respectively. Those figures individually fall below the $75,000 jurisdictional amount under 28 U.S.C. § 1332 but exceed it when combined. Ordinarily, Federal Rule of Civil Procedure 18 permits a plaintiff to join as many claims at it has against a defendant (or a group of jointly liable defendants), and the amounts at stake in those claims may be

aggregated for purposes of meeting the jurisdictional amount, even when brought as an assignee. *See Tam v. Lo*, 968 F. Supp. 1326, 1328 (N.D. Ill. 1997).

However, "[a]ssignments designed to confer diversity jurisdiction . . . are collusive and ineffective." *Hartford Accident and Indem. Co. v. Sullivan*, 846 F.2d 377, 382 (7th Cir. 1988). This prohibition is codified in 28 U.S.C. § 1359: "A district court shall not have jurisdiction of a civil action in which any party, by assignment or otherwise, has been improperly or collusively made or joined to invoke the jurisdiction of such court." Whether an assignment is improper or collusive depends on a "totality of the circumstances" analysis. *Long & Foster Real Estate, Inc. v. NRT Mid-Atlantic, Inc.*, 357 F. Supp. 2d 911, 922 (E.D. Va. 2005).

Courts have applied this statute to revoke jurisdiction in cases where a plaintiff asserts multiple claims as assignee and aggregates the amounts of those claims to meet the amount in controversy requirement. For example, in *Deajess Medical Imaging, P.C. v. Allstate Ins. Co.*, 381 F. Supp. 2d 307, 312 (S.D.N.Y. 2005), the Court held that "plaintiffs' joining together of numerous, small, unrelated controversies in a deliberate effort to meet the required jurisdictional amount constitutes improper joinder and cannot give rise to jurisdiction." The court noted that the plaintiffs, who asserted many of their claims as assignees, were not "parties to the actual controversies" in each case. *Id.* Improper assignment is also more likely to be found where the consideration for assignment is miniscule. *Compare Kramer v. Caribbean Mills, Inc.*, 394 U.S. 823, 828 (1969) (finding assignment was "improperly or collusively made" where assignment was simultaneous with 95% reassignment

back to the original claimant), *with Long & Foster*, 357 F. Supp. 2d at 923 (finding assignment was not improper under § 1359 in part because assignee reimbursed assignors for exact amounts claims were believed to be worth). The Seventh Circuit has suggested that even an otherwise valid assignment may be improper if "getting into federal court was [its] sole purpose." *Steele v. Hartford Fire Ins. Co.*, 788 F.2d 441, 444 (7th Cir. 1986).

The strongest evidence that the assignments here were not made primarily to manufacture jurisdiction may be that Plaintiff invoked federal question jurisdiction for the anchor RICO claims. This made diversity jurisdiction potentially irrelevant, as the Court may have been able to exercise supplemental jurisdiction over the other claims under 28 U.S.C. § 1367. But Plaintiff did not mention supplemental jurisdiction in its complaint or the briefing on this motion. Plaintiff *did*, however, explicitly invoke diversity jurisdiction—it was in fact the first jurisdictional basis offered. R. 1, at 3.

Plaintiff's complaint contains no details about the assignment agreements it entered with Assignors beyond the dates those transactions occurred and that it paid "valuable consideration" for the claims. R. 1 ¶¶ 97, 102. The assignments preceded the filing of this case by nearly a year, which cuts against § 1359's application, as does the fact that Plaintiff is aggregating only two claims, both of non-trivial value. *Cf. Tam*, 968 F. Supp. at 1328 (finding jurisdictional amount satisfied where assignment occurred over a year before suit was filed and one claim was only

10

narrowly below the jurisdictional amount).[3] On the other hand, Plaintiff seemingly has no independent relationship to Assignors' claims. Furthermore, its meritless argument that, as a domestic assignee, it can assert a RICO claim for Assignors' foreign injury suggests the assignment was made *precisely* to manipulate the parties' litigation posture.

Ultimately, on the limited facts available, the Court cannot say with certainty that the assignments here were made with the "sole purpose" of manufacturing jurisdiction.[4] Thus it appears the Court has subject matter jurisdiction over the non-RICO claims.

### b. Failure to State a Claim as to the U.S. Defendants

Even if the Court has jurisdiction over Plaintiff's claims, most of the allegations in the complaint are wholly unrelated to the claimed injury suffered by Assignors. The complaint is largely focused on the RICO claims against the U.S. Defendants, with allegations covering a range of money laundering and wire fraud operations. But the connection between this alleged web of wrongdoing and the two Ghanaian companies Assignors actually dealt with is pled in conclusory fashion and fails to

---

[3] Diversity of citizenship appears to be satisfied no matter whether Plaintiff's California citizenship is used, § 1332(a)(3), or Assignors' foreign citizenship, § 1332(a)(2).

[4] Even if Plaintiffs' claims cannot be combined, it's possible that inclusive of interest (due under the terms of their contracts, not on a potential judgment) and other relief Assignors might be entitled to, the claims would individually exceed the jurisdictional threshold. Dismissal is typically appropriate only if it appears "to a legal certainty" the amount in controversy is insufficient. *Meridian Sec. Ins. Co. v. Sadowski*, 441 F.3d 536, 541 (7th Cir. 2006) (quoting *St. Paul Mercury Indem. Co. v. Red Cab Co.*, 303 U.S. 283, 289 (1938)).

plausibly allege any liability on the part of the U.S. Defendants for Plaintiff's common law claims.

Plaintiff repeatedly argues that wrongdoing by individual defendants, whether that be the Ghanaian entities, U.S. companies, or Nduom and his family, can and should be imparted to all the other defendants because they are all alter egos of one another and part of the same enterprise. *See* R. 20, at 8, 13, 22, 29. The support for these claims, which are really legal conclusions safely disregarded on a motion to dismiss, comes from commonplace corporate subsidiary relationships. Such relationships ordinarily do not create common liability, let alone justify disregarding of corporate forms. *See DeJohn v. The .TV Corp. Int'l*, 245 F. Supp. 2d 913, 925 (N.D. Ill. 2003). Nor has Plaintiff demonstrated that the "separate personalities of the corporation and the individual no longer exist" merely because Nduom or members of his family hold executive roles with some of the corporate defendants. *See Int'l Fin. Servs. Corp. v. Chromas Techs. Canada, Inc.*, 356 F.3d 731, 736 (7th Cir. 2004) . Plaintiff's invocation of the core operations doctrine is likewise inapposite here—that doctrine pertains to scienter in securities fraud cases. *See Stavros v. Exelon Corp.*, 266 F. Supp. 2d 833, 850 (N.D. Ill. 2003).

The consequence of characterizing every defendant as alter egos of each other is confusion as to how any of the U.S. Defendants were involved in Assignors' losses. The complaint therefore fails to allege many required elements as to each defendant, such as a duty of care or specific fraudulent statements. In lieu of clarity, Plaintiff offers volume, most of it devoted to the defunct RICO claims. To the extent the

complaint alleges specific conduct directed at Assignors relevant to the common law claims, that conduct is attributed to Gold Coast and GN Bank (both Ghanaian entities) or "defendants" generally. *See* R. 20, at 30-33. The latter constitutes improper group pleading and is insufficient to state a claim against all defendants. *See Sears v. Likens*, 912 F.2d 889, 893 (7th Cir. 1990) (affirming dismissal of complaint that "lumps all the defendants together and does not specify who was involved in what activity").

All told, it appears likely that Plaintiff cannot make out a valid claim against the U.S. Defendants because the Assignors' claims have nothing to do with them and nothing to do with the United States. Assignors made deals with Ghanaian financial institutions. Those institutions apparently broke those agreements and Assignors lost money. One of the Assignors already filed a lawsuit in Ghana to recover that money. This seems a more prudent course of action than what Plaintiff is attempting in this case.

Accordingly, the remaining claims against the U.S. Defendants are dismissed.[5]

III.    <u>Remaining Claims Against Non-U.S. Defendants</u>

Stripping away the excess, all that remains is a few potentially meritorious claims against Ghanaian institutions. Even if this Court had personal jurisdiction over the Ghanaian defendants alone, which is doubtful, this is not the forum to

---

[5] In its response, Plaintiff states that the naming of GN USA LLC as a defendant was a "scrivener's error." The Court interprets this to mean GN USA LLC should not be party to this lawsuit and accordingly dismisses it as a Defendant with prejudice. No attorney has entered an appearance in this case for GN USA LLC to date.

vindicate those claims. As evidenced by Sekyere's pre-existing lawsuit, Ghana is an available and adequate forum. Everything the complaint alleges related to Assignors' actual injuries took place in Ghana. It is quite possible Ghanaian law would apply, and Ghana has a far greater interest than Illinois in policing private financial dealings between Ghanaian citizens. Nor is Plaintiff's choice of forum owed substantial deference here: Illinois is not Plaintiff's home, and the only reason these claims have been brought stateside is due to assignment. These factors all counsel against hearing these few remaining claims in this Court. *See In re Air Crash Disaster Over Makassar Strait, Sulawesi*, No. 09-cv-3805, 2011 WL 91037 (N.D. Ill. Jan. 11, 2011) (dismissing case with minimal connection to Illinois based on similar factors). Those claims are therefore dismissed for *forum non conveniens*.

## Conclusion

The U.S. Defendants' motion to dismiss [14, 15] is granted. The Court also *sua sponte* dismisses Plaintiff's claims against the non-U.S. Defendants. For the reasons stated above, dismissal of Plaintiff's RICO claims and all claims against GN USA LLC is with prejudice. Plaintiff may move for leave to file an amended complaint it if believes it can cure the remaining deficiencies described in this opinion. That motion must be filed within 21 days of this order or dismissal will be with prejudice. Should Plaintiff file a motion for leave, it must be accompanied by a brief of five pages or less explaining why the proposed amended complaint cures the deficiencies mentioned herein.

ENTERED:

_Thomas M Durkin_

Honorable Thomas M. Durkin
United States District Judge

Dated: November 23, 2021